IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYFORD H. ESTORES, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE PARTNERSHIPS AND )<br>UNINCORPORATED ASSOCIATIONS )<br>IDENTIFIED IN SCHEDULE A, )<br>)<br>Defendants. ) | No. 25-cv-06151<br><br>Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ryford Estores and Self-Cut System, LLC ("SCS") manufacture and sell a foldable tripartite mirror for which they hold a design patent, Patent No. D877,520 S ("'520 Patent"). According to Plaintiffs, the numerous Defendant online retailers listed in Schedule A attached to their original complaint are selling counterfeit foldable mirrors that infringe on their design patent, in violation of 35 U.S.C. § 271. For that reason, Estores initiated the present action and moved *ex parte* for entry of a temporary restraining order ("TRO"). Subsequently, in response to questions regarding whether he has standing to pursue the patent infringement claims on his own behalf, Estores amended his complaint to add SCS as a Plaintiff and to add new claims for trademark infringement, in violation of 15 U.S.C. § 1114, and trade dress infringement. Plaintiffs also filed an amended motion for a TRO (Dkt. No. 41), which is now before the Court. For the reasons that follow, Plaintiffs' amended motion is denied.

### BACKGROUND

Initially, this action was brought with Estores as the sole named Plaintiff. The original complaint asserted against the online retailers listed in Schedule A claims for infringement of the '520 Patent, which claims "[t]he ornamental design for a foldable mirror." (Compl., Ex. A, '520

Patent Registration, Dkt. No. 1-1.) Estores invented the '520 Patent's design and employs it in connection with the sale of a foldable three-way mirror. That mirror is advertised as an aid for self-haircuts, as it provides the user with a 360-degree view of their head.

Shortly after filing his original complaint, Estores filed a motion for entry of a TRO. Although Estores sought *ex parte* consideration of his TRO motion, four Defendants nonetheless learned of his motion, filed appearances in this case, and, between them, submitted three briefs in opposition to the requested TRO. (Dkt. Nos. 18, 19, 22.) Those Defendants—identified by the store names and numbers by which they are listed on Schedule A—are as follows: CSJS (Defendant No. 1), JDFQ-US (Defendant No. 7), Vanexiss-US (Defendant No. 17), and YHHH Store (Defendant No. 22). Two other stores, QianLiHui and lmznxcz, entered appearances believing themselves to be Defendants in this action but their store names were not listed on the Schedule A and Estores was unable immediately to confirm whether or not those stores were, in fact, Defendants.[1] In their briefs in opposition to Estores's motion for a TRO, those appearing Defendants argue that Estores is unlikely to succeed on the merits of his patent infringement claims because prior art renders the '520 Patent invalid. And even if the '520 Patent were valid, the appearing Defendants further argue, an ordinary observer would not regard their accused products to be substantially the same as the design of the '520 Patent.

The Court held a hearing on the TRO motion, with testimony and argument, on July 2, 2025. During that hearing, the Court heard testimony from Estores and received other evidence, including examples of several of the accused products. The Court then took the matter under

---

[1] The Court was able to match the Amazon store ID number listed in Schedule A for Defendant No. 10 with screenshots of a store with the same ID number and identified as lmznxcz in the screenshot exhibits that Estores introduced with his original motion for a TRO. (Dkt. No. 17.) Thus, it appears that lmznxcz is Defendant No. 10 on Schedule A, which lists it under the name liangjdp789.

2

advisement for ruling. But before the Court ruled on the original TRO motion, two additional Defendants entered appearances, Mantening Technology Limited d/b/a JUSRON (Defendant No. 8) and LFBS LLC (Defendant No. 9), and each submitted a brief in opposition to the TRO. (Dkt. Nos. 30, 37.) In those new opposition briefs, the appearing Defendants argue for the first time that Estores had assigned his rights and title in the '520 Patent to SCS, and therefore Estores lacks standing to bring a claim for infringement of the '520 Patent. Indeed, SCS is listed in the '520 Patent's assignee in the patent's registration.

      Although Estores contests that the assignment to SCS deprives him of standing to enforce the '520 Patent, he nonetheless decided to file an amended complaint adding SCS as a Plaintiff. (Dkt. No. 38.) The amended complaint also newly alleges that, in selling their foldable mirrors, Defendants also infringed on Plaintiffs' trademark for "Self-Cut System," Trademark Registration No. 4,583,112, and copied the distinctive trade dress under which Plaintiffs sold their patented mirrors. Accordingly, the amended complaint asserts new claims for trademark infringement and trade dress infringement, along with claims for false designation of origin, in violation of 15 U.S.C. § 1125(a), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (The amended complaint does not differentiate among the Defendants listed on Schedule A; thus, presumably, Plaintiffs intend to assert all claims against all Defendants.) Plaintiffs also filed an amended motion for entry of a TRO. The amended motion, which is three pages long, is not accompanied by any declarations, affidavits, or other evidentiary support. Presumably, Plaintiffs intend to rely on the evidentiary support offered in support of the original TRO motion, which of course was directed only toward alleged patent infringement and contains little information regarding the alleged trademark and trade dress infringement. In any case, for purposes of the present request for a TRO, the Court will consider

the original TRO motion and its supporting materials (including the testimony at the July 2 evidentiary hearing) together with the amended TRO motion as the complete record before the Court. It should also be noted that, following Plaintiffs' amended motion for a TRO, one more Defendant, Wanmikechuang-US (Defendant No. 18), entered an appearance and submitted a brief in opposition to Plaintiffs' amended TRO motion. (Dkt. No. 43.) And LFBS LLC ("LFBS"), which had previously appeared in opposition to the original TRO, submitted a new brief opposing the amended TRO motion. (Dkt. No. 48.)

## DISCUSSION

To obtain a TRO pursuant to Federal Rule of Civil Procedure 65(b), a plaintiff first "must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; [and] that without relief it will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotation marks omitted).[2] If the plaintiff demonstrates those threshold requirements, the Court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *Id.* (internal quotation marks omitted). On the other hand, "[if] the plaintiff fails to meet any of the[] threshold requirements, the court must deny the injunction." *Id.*

In the present case, the Court's TRO analysis begins and ends with its consideration of Plaintiffs' likelihood of success on the merits. This threshold requirement for a TRO "is often decisive." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 & n.4 (7th Cir. 2022) (internal quotation marks omitted). Although the plaintiff "need not show that it will definitely win the case" to

---

[2] The standards for TROs and preliminary injunctions are the same. *See, e.g.*, *Chi. Tchrs. Union v. DeVos*, No. 20-cv-02958, 2020 WL 3404749, at *3 (N.D. Ill. June 19, 2020); *USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019) (collecting cases).

demonstrate a likelihood of success on the merits, it nonetheless "bears a significant burden." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Such a showing does not require "proof by a preponderance," but normally the plaintiff must at least show how it "proposes to prove the key elements of its case." *Id.* What is clear is that "the mere possibility of success is not enough," nor is "a 'better than negligible' chance." *Ill. Republican Party*, 973 F.3d at 762.

Plaintiffs argue that they have a likelihood of success on the merits of their design patent, trademark, and trade dress infringement claims. Notably, however, their amended TRO's arguments regarding the merits of those claims are perfunctory and underdeveloped. For that reason alone, Plaintiffs fail to meet their burden of showing that they are likely to succeed as to the new trademark and trade dress infringement claims, which were not included in the case at the time of the original TRO motion and thus find no support there. Nonetheless, the Court notes that it is not apparent from its review of the screenshot evidence of Defendants' allegedly infringing sales submitted in support of the original motion that any Defendant is making sales using Plaintiffs' "Self-Cut System" trademark. (*See* Pl. Estores's Mot. for a TRO, Ex. B-2, Dkt. No. 17-1.) And while the amended complaint alleges that LFBS is selling infringing mirrors using a URL that contains the phrase "Self-Cut System," the evidence of that is not from LFBS's website itself but a message that provides a link with that URL. When the Court attempted to follow the URL, it received a "Page not found" message from the LFBS website. As for the trade dress infringement claim, one element that Plaintiffs must prove is that their "trade dress has either acquired secondary meaning or is inherently distinctive." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 380 (7th Cir. 1996). Their proof as to this element is derived from Estores's testimony given at the hearing on the original TRO motion, which predated the amended complaint and its assertion of a trade dress infringement claim. Moreover, his testimony

5

concerned his communications with two customers who mistakenly purchased a mirror from one of the Defendants on Schedule A, LFBS, and those customers spoke only of their dissatisfaction with the product itself and made no mention of the product's packaging or trade dress.

Plaintiffs' original TRO motion contains a more developed argument concerning their likelihood of success on the merits of their design patent infringement claim. In considering the merits of Plaintiffs' patent infringement claim, the Court looks to substantive precedent from the Federal Circuit. *E.g.*, *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1400 (Fed. Cir. 2022) ("Although we review a district court's grant of a preliminary injunction under the law of the regional circuit, we give dominant effect to the Federal Circuit precedent insofar as it reflects considerations specific to patent issues. Whether a patentee has shown a likelihood of success on the merits is one such area where we apply our own law, as it is a question specific to patent law." (internal quotation marks and citations omitted)); *Techtronic Indus. Co. v. Chevron Holdings, Ltd.*, 395 F. Supp. 2d 720, 724 n.3 (N.D. Ill. 2005) ("The law of the Federal Circuit Court of Appeals governs the issuance of preliminary injunctions in patent infringement cases."). To establish a likelihood of success on the merits, the Federal Circuit requires that a patent holder "show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). However, where a defendant "raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove lacks substantial merit, the preliminary injunction should not issue." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001) (internal quotation marks omitted).

Here, all appearing Defendants deny that they infringed the '520 Patent and challenge the validity of that design patent. Because the Court finds that Plaintiffs have not shown that they are likely to succeed in proving that any Defendant infringed on the '520 Patent, the Court need not address whether that design patent is likely to withstand a challenge to its validity.

"Design patent infringement occurs when a party, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied." *ABC Corp. I v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022). The key question is whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (internal quotation marks omitted). Differences between the claimed and accused designs "must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Id.* The patentee has the burden of proving infringement of a design patent by a preponderance of the evidence. *Id.*

As an initial matter, the Court observes that Plaintiffs appear to misconceive the scope of the '520 Patent's claimed design. A design patent's scope is defined by the figures shown in the patent. *Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1339 (Fed. Cir. 2019). Depicted below are some of the figures from the '520 Patent:

7



(Compl, Ex. A, '520 Patent Registration.) The image on the left shows the front and back of the patented mirror design, and the image on the right illustrates a top view of the design for the mirror. Plaintiffs contend that the '520 Patent claims three elements: (A) a foldable mirror, comprising (B) multiple mirrors connected side-by-side in a foldable arrangement, and with (C) a hook mounted on the rear side of the mirror for hanging purposes. (Pl. Estores's Mot. for a TRO, Ex. B-1 at 1, Dkt. No. 17.) But each of those three elements serve a functional purpose with respect to Plaintiffs' product, which is sold as an at-home self-haircut tool. As Estores testified, the hinged, trifold design of the mirror allows the user to see all angles of their head while the telescopic, adjustable arms with U-shaped hooks allow the user to hang the mirror over a door level with their head. Yet a design patent protects only the ornamental, non-functional elements of a design. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

While a patented design may "contain[] both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010)

(internal quotation marks omitted). Thus, Plaintiffs are incorrect insofar as they contend that the '520 Patent is infringed by any product consisting of a trifold mirror with extendable, hooked arms. "Similarity at this conceptual level . . . is not sufficient to demonstrate infringement of the claimed designs." *Ethicon*, 796 F.3d at 1336. Instead, Plaintiffs' design patent can claim only "the ornamental aspects of these functional elements." *Id.* at 1333. Accordingly, to prove infringement, Plaintiffs "must show that the perceived similarity" between the accused products and the claimed design are "based on the ornamental features of the design." *OddzOn Prods.*, 122 F.3d at 1405. That analysis focuses on the design's "overall ornamental visual impression, rather than the broader general design concept." *Id.*

With that standard in mind, the Court turns to consider whether Plaintiffs are likely to succeed in proving that Defendants have infringed on the '520 Patent. That analysis requires the Court to apply "the ordinary observer test on a product-by-product basis." *ABC Corp. I*, 52 F.4th at 943. Based on the samples of the accused products that it received as exhibits, the Court first observes that LFBS's accused product design differs significantly from the design of the other appearing Defendants' accused products, most of which share a substantially similar design.[3] The Court therefore conducts its infringement analysis as to LFBS's mirror separately from its analysis of the other Defendants' accused products.

---

[3] The variations among the accused products' designs raises a serious question as to the propriety of Plaintiffs' joining all Defendants in a single case. Under 35 U.S.C. § 299(a), which "imposes a higher standard for joinder in patent cases," it is not enough that the defendants are alleged to have infringed the same patent. *Cozy Comfort Co. LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A to the Complaint*, No. 23-cv-16563, 2024 WL 2722625, at *8 (N.D. Ill. May 28, 2024). Rather, defendants may be joined only where they "sell the 'same' accused product" and "variations among the accused products' designs demonstrates that Defendants are not selling the 'same' product, thereby precluding joinder under the statute." *Id.* at *9. At least one Defendant has indicated that it intends to bring a motion to sever in this case, and so the Court will, for now, reserve questions regarding joinder until the matter has been briefed.

The Court finds that LFBS's accused product differs significantly from the '520 Patent's claimed design. LFBS's accused product is shown below in the images on the left and contrasted with comparable views of the claimed design on the right:

 

(Top View, Unfolded)

 

(Back View, Unfolded)

 

(Front View, Folded)

(Def. LFBS's Opp'n to Mot. for a TRO, Ex. 3, Dkt. No. 30-5; Compl., Ex. A, '520 Patent Registration.) There are four material differences that can be readily observed from the above comparison. First, when retracted, the arms of LFBS's mirror are concealed within a plastic panel behind the center mirror. By contrast, the arms of the '520 Patent's claimed design are held

10

inside tubing that protrudes from the back of the center mirror with two protruding clasps securing the arms' hooks when fully retracted. Second, the arms of the LFBS mirror are connected by a plastic bridge to form a handle, whereas the arms on the claimed design are unconnected and each can be rotated. Third, because the LFBS mirror's arms are concealed in a plastic panel behind the center mirror, its center panel is thicker than the center panel of the claimed design; save for the attached protruding arms, the claimed design's center panel is approximately the same width as the side mirrors. Fourth, each side mirror on the claimed design is attached to the center mirror by two hinges that are visually separate from each other. On the other hand, the hinges on LFBS's mirror are connected by a plastic tubular bridge erasing the visual separation between the hinges. Considering those differences as a whole, the Court concludes that LFBS's mirror creates a plainly dissimilar visual impression from the claimed design. Consequently, the Court concludes that Plaintiffs are unlikely to be able to demonstrate that the LFBS mirror infringes on the '520 Patent.

As for the other appearing Defendants, the Court notes that their accused products are not identical but their designs are similar in aspects material to the ordinary observer analysis. For simplicity, the Court addresses those accused products together based on the following image of Defendant lmznxcz's accused product, which provides a representative example of the other appearing Defendants' mirrors:



(Pl. Estores's Mot. for a TRO, Ex. B-1 at 24.) Unlike the LFBS mirror, the lmznxcz mirror is similar to the claimed design in that the side mirrors on both are connected to the center mirror with two visually distinct hinges. In addition, the lmznxcz mirror has two unconnected extendable arms like the '520 Patent's design. However, as with the LFBS mirror, the lmznxcz mirror's two arms retract into a plastic panel behind the center mirror. The panel's concealment of the retracted arms results in a visual impression that is readily distinguishable from that of the '520 Patent's design.

First, the back of the lmznxcz mirror is entirely flat, save for the two indentations to secure the arms's hooks when fully retracted. By contrast, in the claimed design, the tubes encasing the arms, the clasps securing the hooks, and the extendable arms themselves all protrude from the center mirror's rear surface. Second, the plastic panel built to conceal the retracted arms of the lmznxcz mirror results in the center panel being substantially thicker than the center panel of the claimed design. With the lmznxcz mirror, the tradeoff for a flat, smooth rear surface is added bulk. Conversely, the claimed design's less streamlined center panel reduces its surface area by eliminating the extra plastic used to surround the retracted arms. As discussed above, excluding the protruding arms on the center mirror, the three mirrors on the

12

claimed design all have the same width. This gives Plaintiffs' mirror an overall thinner and more compact appearance as compared to the bulkier lmznxcz mirror. The Court finds that such difference in respective designs' overall visual impression would likely stand out to an ordinary observer.

Plaintiffs contend that the Court should not devote excessive focus to how the backsides of the accused products differ from that of the claimed design. Given that the '520 Patent relates to the design of a mirror, they insist that the ordinary observer would be more drawn to the front, mirror portion of the design. However, Plaintiffs' contention is faulty in multiple ways. To begin, it ignores that the '520 Patent includes multiple figures illustrating the rear of the center mirror and the attached arms, making them as much a part of the claimed design as the mirrors. *See Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("[A]ll ornamental features illustrated in the figures must be considered in evaluating design patent infringement."). Relatedly, focusing on the mirrors to the exclusion of the rest of the claimed design would be contrary to the Federal Circuit's instruction against focusing on similarities in ornamental features in isolation rather than in the context of the design as a whole. *Ethicon*, 796 F.3d at 1335. Finally, Plaintiffs fail to identify an ornamental aspect of the front, mirror-side of the design that is protected. As Plaintiffs acknowledge, there are multiple trifold mirrors in the prior art. (Pl. Estores's Mot. for TRO, Ex. B-1 at 2–3; *see also* Def. CSJS's Opp'n to Mot. for TRO, Ex. A, Prior Art List, Dkt. No. 18-1.) But Plaintiffs fail to identify the ornamental features of the mirror portion of the '520 Patent's claimed design that set it apart from the prior art. Thus, the ordinary observer's focus is drawn away from a comparison of the mirror side of the design and toward the differences in the back surfaces of the claimed design and the accused products. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) ("When there are

13

many examples of similar prior art designs . . . differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.").

In sum, the Court finds that the differences in the ornamental aspects the accused products and the claimed design create a substantial question as to whether Plaintiffs will be able to prove that the designs of the LFBS mirror and the lmznxcz mirror (and like accused products) infringe on the '520 Patent. As discussed above, the existence of a substantial question concerning infringement precludes the issuance of a TRO. To this point, the Court's discussion has been addressed only to the products submitted by the appearing Defendants—those Defendants have appeared in this action, they submitted briefs arguing why their accused products do not infringe, and the Court has received in evidence samples of their accused products. Nonetheless, the screenshot exhibits that Estores submitted in support of the original TRO motion reveal that the non-appearing Defendants' accused products all appear to contain the same distinguishing features as either the LFBS mirror or the lmznxcz mirror (or a combination of both). Again, Plaintiffs do not have exclusive rights in a trifold mirror with extendable arms and hooks for over-the-door hanging; their rights are only in the specific design depicted in the figures. Yet the Court cannot discern from Plaintiffs' screenshot evidence a single accused product that copied the '520 Patent's particular protruding arms ornamental design. Especially considering Plaintiffs' misconstruction of the scope of their design patent, the Court finds a substantial question as to Plaintiffs' likelihood of success in proving infringement even as to the non-appearing Defendants. The Court therefore declines to issue injunctive relief as to any Defendant.

## CONCLUSION

For the foregoing reasons, Plaintiffs' amended motion for entry of a TRO (Dkt. No. 41) is denied.

ENTERED:

Dated: August 11, 2025

Andrea R. Wood
United States District Judge

15